IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CRAIG COATES, MOLLY WARRINGTON**                                               **PLAINTIFFS**
**and EDWIN SMITH, Each Individually and**
**on Behalf of All Others Similarly Situated**

V.                                   NO. 4:17-CV-00372-JLH

**DASSAULT FALCON JET CORP.**                                                         **DEFENDANT**

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DECERTIFY THE FLSA COLLECTIVE ACTION

Defendant Dassault Falcon Jet Corp. ("Dassault Falcon Jet" or "DFJ"), by and through its counsel, Brian A. Vandiver, a partner in the law firm of Cox, Sterling, McClure & Vandiver, PLLC, for its Brief in Support of Defendant's Motion to Decertify the FLSA Collective Action, states:

### I. INTRODUCTION AND FACTS

For the following reasons, DFJ respectfully requests that the Court decertify the FLSA collective action that it conditionally certified previously in this case. Please see Defendants' Statement of Facts, incorporated by reference.

### II. ARGUMENT

The Fair Labor Standards Act ("FLSA") provides that an action for unpaid overtime may be maintained against an employer by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The fundamental inquiry in deciding whether a collective action is appropriate is whether or not the plaintiffs are "similarly situated." *Smith v. Heartland Auto. Servs.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005). Plaintiffs

1

must prove they are similarly situated. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996).

Courts typically approach the inquiry by using a two-stage approach. *Smith*, 404 F. Supp. 2d at 1149. At the first stage, which has been labeled the initial conditional-certification stage, the plaintiffs' burden is not rigorous and they must only show a "colorable basis for their claim" and "that a class of similarly situated plaintiffs exist." *Douglas v. First Student*, Inc., 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012). At the second stage, a defendant may decertify the class if, after discovery, "the evidence shows that members of a conditionally certified class are not similarly situated." *Smith*, 404 F. Supp. 2d at 1149 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)).

The second stage, or decertification stage, uses a stricter standard and analyzes three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) various defenses available to a defendant that appear individual to each plaintiff; and (3) fairness and procedural considerations. *Douglas*, 888 F. Supp. 2d at 933. The essential inquiry is whether the differences among plaintiffs outweigh the similarities of the alleged practices. *White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 U.S. Dist. LEXIS 52928, at *12 (W.D. Tenn. May 17, 2011).

Factors that courts may consider when considering a motion for decertification include: (1) whether everyone worked in the same location; (2) whether everyone had the same job title; (3) whether the alleged violation occurred during the same time period; (4) whether the workers were subjected to the same policies and procedures, with the policies and procedures being established in the same manner by the same decisionmaker; and (5) the extent to which the acts

constituting the violation are similar. *Murray v. Silver Dollar Cabaret, Inc.*, No. 5:15-CV-5177, 2017 U.S. Dist. LEXIS 17462, at *5-6 (W.D. Ark. Feb. 8, 2017).

A.  **Disparate Factual and Employment Settings**

Commonality between the basis for claims and the potential claims of the proposed class is necessary to maintain the interests of judicial economy and to avoid opportunities for abuse. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002). FLSA misclassification cases involve a "fact-intensive inquiry into the duties performed by the different types of employees." *Harris v. Sw. Power Pool, Inc.*, No. 4:11CV00679 JLH, 2011 U.S. Dist. LEXIS 129583, at *6 (E.D. Ark. Nov. 8, 2011). At the decertification stage, it is appropriate for courts to decertify a class when the focus of the court's analysis is on the nature of the employee's job duties. *Smith v. Frac Tech Servs.*, No. 4:09CV000679 JLH, 2009 U.S. Dist. LEXIS 109930, at *14 (E.D. Ark. Nov. 24, 2009). Courts also consider salaries in analyzing Plaintiffs factual and employment settings. *Hamilton v. Diversicare Leasing Corp.*, No. 1:12-cv-1069, 2014 U.S. Dist. LEXIS 139712, at *9 (W.D. Ark. Oct. 1, 2014). Job descriptions that indicate different duties, responsibilities, and competency requirements serve as evidence that plaintiffs are not similarly situated. *Pressler v. FTS USA, LLC*, No. 4:09CV00676 JLH, 2010 U.S. Dist. LEXIS 55181, at *14-15 (E.D. Ark. May 12, 2010). Individualized inquiries that are conducted to determine if any class members worked off-the-clock during a week, and how many hours they worked, render a collective claim inappropriate. *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 934 (E.D. Ark. 2012).

For all three classes in this case – Team Leaders, Office Personnel (or Financial Analysts), and Production Liaisons – the employees worked in disparate factual settings even inside Defendant's large facility in Little Rock. For example, Coates does not know the other Team

Leaders except for Robert Anderson, Daniel Drennon, and Caressa Hill, nor does he know about the functions or duties of the jobs. Coates Dep., at 27:19-29:12; Coates Dep., at 64:9-64:12. 26. Coates also does not know about the jobs or work experiences of other Team Leaders because the Team Leaders were in different departments, under different managers, in different buildings. Coates Dep., at 67:10-67:20. The Team Leader positions have different job duties and different job descriptions based upon in which department they are located. Vandervort Dep., at 73:16-73:20; Cart Dep., at 59:2-59:11. The Team Leaders also have different educational and skill requirements. Vandervort Dep., at 34:16-34:21. Even though Coates alleges that Anderson in the cabinet shop was the Team Leader most similar to him, Anderson testified that his job was unique and distinct from Coates' job because Anderson's team actually built the cabinet and Coates' team merely installed them. In basic terms, Anderson's team were akin to carpenters who built the cabinets and Coates's team were painters who painted and finished the cabinets. Anderson Dep., at 29:24 – 30:3.

    Likewise, Amanda Thomas is the only other Plaintiff Warrington. Otherwise, she does not know her fellow class members (Office Personnel/Financial Analysts) or their duties because the class members worked for different managers, had different job titles, and had different job descriptions. Warrington Dep., 57:12-59:11. Even though Thomas had a similar title to Ms. Warrington, Ms. Thomas testified that her skill was specialized and only she performed her job. Thomas Dep., at 16:1-16:7.

    Mr. Smith only worked in the same location as other Production Liaisons, he did not know liaisons in other departments because they worked in other parts of the facility. Smith Dep., at 36:16-37:4. Liaisons have different job duties and different job descriptions depending upon the department in which they are located. Vandervort Dep., at 73:25-74:3; Cart Dep., at 59:12-29:15.

The record indicates that most of class members ended their employment at different times since June 2014, while a few remain currently employed. Ten of the class members (including the four non-exempt Plaintiffs already dismissed by the Court) signed separation agreements in exchange for severance packages and releases to not sue DFJ. And two class members are dead (Varnell and Billingslea). Cart Declaration. The factual settings are too disparate for a collective action to be appropriate. The vastly different settings give rise to strong fairness and procedural concerns.

The nature and location of the employment settings will require extensive examination into the individual claims of members of the collective action because the Plaintiffs are challenging Defendant's classification of the employees as exempt employees. Whether the employees were correctly classified as exempt employees is an innately individual question that will require evidence that varies from department to department and class member to class member. The record also evidences that human resources made exempt classification decisions on a case-by case basis based upon the individual's specific job responsibilities. Vandervort Dep., at 19:17-19:20.

The Team Leaders are classified as exempt employees under both the administrative and executive exemption. The Production Liaisons and Office Personnel (Financial Analysts) classes are classified as exempt under the administrative exemption. Moreover, some of the employees, like Craig Coates, are and were highly compensated employees.

An analysis regarding the administrative and executive exemption turns on the employee's "primary duty". 29 C.F.R. § 541.200(a)(2); 29 C.F.R. § 541.100(a)(2). The primary duty of an employee's job is the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Factors to consider when determining the primary duty of an individual can include the relative importance of exempt duties compared with other duties, the amount of

time spent on exempt work, the employee's relative freedom from supervision, and the relationship between the employee's salary and wages paid to other employees for the kind of nonexempt work performed by the employee. *Id*. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. 29 C.F.R. § 541.201(a). To meet this requirement, the employee must perform work directly related to assisting with the running of the business, as distinguished from working on a manufacturing line for example. *Id*. An employee's primary duty is the duty of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of the employee's time. *Spinden v. GS Roofing Prods. Co*., 94 F.3d 421, 427 (8th Cir. 1996).

If the Court allows the collective action to proceed, the jury might have to decide at the trial whether or DFJ correctly classified each Plaintiff as an exempt employee. If the exemption classifications at issue are a question of fact, then the jury would have to apply the law and decide - on a Plaintiff-by-Plaintiff basis – whether DFJ properly classified that Plaintiff as an exempt employee based upon that individual Plaintiff's specific job duties. Such a laborious process completely defeats the purpose of the collective action. The record demonstrates the employees worked in unique and specialized jobs with little overlap in job duties or performance. Therefore, it would be impossible for a jury to make a determination regarding the exemptions at issue in this case on a class-wide basis.

Additionally, some Team Leaders would be properly classified as exempt under the highly compensated employee exemption. Mr. Coates was exempt as a "highly compensated employee", that is an employee who earned at least $100,000 a year and who performed at least one of the exempt duties of an executive, administrative, and professional employee. 29 C.F.R. § 541.601(a). The FLSA regulations exempt "highly compensated employees," which are employees who have

a total annual compensation of at least $100,000, and who "customarily and regularly" perform any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee. 29 C.F.R. § 541.601(a). A high level of compensation is a strong indicator of an employee's exempt status, eliminating the need for a detailed analysis of an employee's job duties. 29 C.F.R. § 541.601(c). As with the previous exemptions, the employee's primary duty is the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The frequency must be greater than occasional, but need not be constant, so long as the work is performed normally and recurrently every workweek. 29 C.F.R. § 541.701. An employee qualifies for the highly compensated employee exemption even if his or her primary duty was to perform nonexempt work, so long as the employee also performed at least one exempt duty regularly. *In re RBC Dain Rauscher Overtime Litig*., 703 F. Supp. 2d 910, 943 (D. Minn. 2010).

The Court will be forced to view the evidence regarding class members' pay on a member by member basis in order to ascertain whether or not the highly compensated employee exemption applies. Determining whether each Team Leader was paid the requisite amount and performed exempt job duties would generate a mass of generalized inquiries rather than produce common answers. The evidence will vary from class member to class member and, consequently, a collective action is not practicable.

The record further highlights the vast differences between each employee's day-to-day tasks. For example, the Team Leaders did not know Team Leaders in other departments, nor did they know anything about their job duties. Coates Dep., at 27:19-29:12; Coates Dep., at 64:9-64:12; Coates Dep., 64:14-66:2. The Team Leaders were in different departments, under different managers, in different buildings. Coates Dep., at 67:10-67:20. 27. Anderson never went to a

different department of a Team Leader and he testified at his deposition that each department had its own specific skill to perform. Anderson Dep., at 26:11-26:19.

Similarly, the Production Liaisons were only similarly situated to the liaisons in their specific department. Smith never filled in for other liaisons because they were in different disciplines and he would not know how to do the different processes under different management. Smith Dep., at 34:1-34:12. Smith testified that he did not know the workings of other departments, nor does he know anything about their job duties.  Smith Dep., at 36:16-37:4.

Office personnel also lack any common job duties, because each individual worked on specific and unique tasks.  Amanda Thomas, while employed as a Financial Analyst I, would gather data for special projects to troubleshoot issues, a job duty only she did because of her specialization.  Thomas Dep., at 15:12-15:22; Thomas Dep., at 16:1-16:7. 54.  Ms. Thomas primarily worked on these specialty projects while a Financial Analyst I (and then as a Financial Analyst II) from May 2016 until early 2018. Thomas Dep., at 22:3-22:12.  No other Financial Analyst did special projects to analyze ways for DFJ to reduce costs like Ms. Thomas.  Thomas Dep., at 23:4-23:7.  These disparate facts will require too much individual proof for a collective action to be appropriate.

Individualized inquiries into whether the Office Personnel (aka Financial Analysts) worked off-the-clock during any week will also render a collective claim inappropriate in these circumstances. At DFJ, casual overtime is "overtime worked by exempt employees that requires no approval, need not be recorded, and is not scheduled in advance," while directed overtime is overtime "by exempt employees that is planned and scheduled by management and approved in writing in advance." Coates Dep., at 53:19-54-7. Only the Office Personnel allege they worked casual overtime for which they were not paid at all.  Warrington Dep., at 35:25-36:6; Thomas

Dep., at 52:15-52:21. (The Team Leaders and Production Liaisons alleged they were paid straight time overtime and are owed the extra half time for each overtime hour.) Only the Office Personnel believe their actual hours worked are not accurately recorded by DFJ's payroll records. Coates Dep., at 70:1-70:5; Anderson Dep., at 39:14-39:16; Smith Dep., at 40:23-41:3; Warrington Dep., at 35:2-35:5. (The Team Leaders and the Production Liaisons have not alleged that their actual hours worked are incorrectly recorded in DFJ's records.) Neither Ms. Thomas nor Ms. Warrington have any contemporaneous notes, records, or documents to track their true hours worked from June 2014 – June 2017. Warrington Dep., at 38:24-38:10; Thomas Dep., at 42:2-42:12. Ms. Warrington and Ms. Thomas both believe the gate scans are the most accurate reflection of their hours worked. Warrington Dep., at 37:24-38:3; Warrington Dep., at 38:21-38:23; Thomas Dep., at 42:2-42:12. However, Ms. Warrington admitted that she does not begin work, nor does she end her day, when she crosses the gate. Warrington Dep., at 38:5-38:8; Warrington Dep., at 69:17-69:25. Attempting to determine the actual hours worked off-the-clock, if any, for each of the five class members in the Office Personnel/Financial Analysts class would be a massive undertaking that would create individual inquiries within the class. Consequently, it would be inappropriate to certify the Office Personnel class.

**B.     Defenses Individual to Each Plaintiff**

The individualized defenses factor assesses "whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 313 (D. Md. 2014). Defenses raised as to individual Plaintiffs, such as unclean hands, judicial estoppel, etc., highlight the distinctions in Plaintiff's claims and favor decertification. *Arnold v. DirecTV*, LLC, No. 4:10-CV-352-JAR, 2017 U.S. Dist. LEXIS 48472, at *28 (E.D. Mo. Mar. 31, 2017).

As noted extensively above, Defendant asserts it rightfully categorized the employees as exempt, and the exact nature of the defense will vary from plaintiff to plaintiff. The various exemptions (e.g., executive, administrative, highly compensated) will apply in various combinations and degrees to the Plaintiffs depending upon their specific job duties and pay. Furthermore, Defendant has asserted equitable defenses of set-off, assumpsit, and the like and brought a counterclaim against ten of the class members (four of whom were dismissed as the non-exempt employees) who signed separation agreements for which they received varying sizes of severance packages in exchange for agreeing to not bring any suits against DFJ. Anderson Dep., at 15:7-15:19; Anderson Dep., at 15:20-15:23. These defenses are individual to specific Plaintiffs, and not to classes as a whole.

Finally, the defenses to damages are unique. DFJ argues that it is entitled to the fluctuating work week ("FWW") defense for all class members determined to be non-exempt employees. But Defendant paid some exempt employees (including Team Leaders and Production Liaisons) straight-time pay for overtime that Defendant required. Coates Dep., at 53:19-54-7. However, not all exempt employees received straight-time pay because Office Personnel employees, like Ms. Warrington, only allege that they worked casual overtime that was not directed by DFJ. Warrington Dep., at 28:23-28:25. Thus, any employee who received straight-time pay for overtime will require an individual analysis into the amount of overtime hours they worked and whether or not they are owed any overtime when combining the fluctuating workweek and the straight time overtime. On the other hand, DFJ has unique defenses the Office Personnel employees depending upon the records (or lack of records) individual to that employee and the amount of hours worked off-the-clock claimed by that employee.

These defenses are also discussed in DFJ's Motion for Summary Judgment.

### C.     Fairness and Procedural Concerns

This Court must determine whether it can coherently manage the class in a manner that will not prejudice any party. *Rawls v. Augustine Home Health Care, Inc*., 244 F.R.D. 298, 302 (D. Md. 2007). Coherent management at trial and avoidance of jury confusion are essential considerations at the decertification stage. *Hamilton v. Diversicare Leasing Corp*., No. 1:12-cv-1069, 2014 U.S. Dist. LEXIS 139712, at *14 (W.D. Ark. Oct. 1, 2014). As noted above, because of the disparate and unique facts, employment issues, and defenses, managing this collective action of twenty-five Plaintiffs at a jury trial will result in an incoherent and impracticable procedure that is not fair to DFJ (or the Plaintiffs). The jury will assuredly be confused at the task answering individualized questions for each Plaintiff to attempt to decide collective results.

### III.  CONCLUSION

For these reasons, Defendant Dassault Falcon Jet Corp. respectfully requests that the Court decertify the FLSA collective action it conditionally certified previously in this case and grant Defendant all other proper and just relief.

Respectfully Submitted,

Brian A. Vandiver
Cox, Sterling, McClure & Vandiver, PLLC
8712 Counts Massie Road
North Little Rock, AR 72113
(501) 954-8073
bavandiver@csmfirm.com

By: /s/ *Brian A. Vandiver*
Brian A. Vandiver, Ark. Bar No. 2001078

*Attorney for Defendant Dassault Falcon Jet Corp.*

**CERTIFICATE OF SERVICE**

I, Brian A. Vandiver, do hereby certify that a true and correct copy of the foregoing pleading was filed with the Clerk of Court and served via ECF to the following on this 19th day of July, 2018:

Chris Burks
Josh Sanford
Sanford Law Firm, PLLC
650 S. Shackleford, Suite 411
Little Rock, AR 72211
chris@sanfordlawfirm.com
josh@sanfordlawfirm.com

By: /s/ *Brian A. Vandiver*
Brian A. Vandiver