**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CRAIG COATES, MOLLY WARRINGTON**                                    **PLAINTIFFS**
**and EDWIN SMITH, Each Individually and**
**on Behalf of All Others Similarly Situated**

**V.**                                **NO. 4:17-CV-00372-JLH**

**DASSAULT FALCON JET CORP.**                                              **DEFENDANT**

## BRIEF IN SUPPORT OF DEFENDANT'S
## SECOND MOTION FOR SUMMARY JUDGMENT

Defendant Dassault Falcon Jet Corp. ("Dassault Falcon Jet" or "DFJ"), by and through its

counsel, Brian A. Vandiver, a partner in the law firm of Cox, Sterling, McClure & Vandiver,

PLLC, for its Brief in Support of Defendant's Second Motion for Summary Judgment, pursuant

to Local Rule 7.2, states:

### I.  STATEMENT OF FACTS

Please see Defendant's Statement of Facts incorporated by reference.

### II.  SUMMARY JUDGMENT

The Eighth Circuit recently summarized the law regarding summary judgment in

employment cases:

> Summary judgment is proper if the pleadings, the discovery and disclosure
> materials on file, and any affidavits show that there is no genuine issue as to any
> material fact and that the movant is entitled to judgment as a matter of law.  The
> movant bears the initial responsibility of informing the district court of the basis
> for its motion, and must identify those portions of [the record] ... which it believes
> demonstrate the absence of a genuine issue of material fact.  If the movant does
> so, the nonmovant must respond by submitting evidentiary materials that set out
> specific facts showing that there is a genuine issue for trial.  On a motion for
> summary judgment, facts must be viewed in the light most favorable to the
> nonmoving party only if there is a genuine dispute as to those facts. . . . In a
> landmark case, the Court wrote:  Summary judgment procedure is properly

1

> regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.  Because summary judgment is not disfavored and is designed for every action, panel statements to the contrary are unauthorized and should not be followed.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc) (internal citations and quotations omitted).

If Plaintiffs identify a factual dispute, "a disputed fact alone will not defeat summary judgment." *Torgerson,* 643 F.3d 1031, 1042 (8th Cir. 2011).  Rather, "there must be a genuine issue of material fact." *Id*. (citing *Liberty Lobby,* 477 U.S. at 247–48).  "To be material, a fact 'must affect the outcome of the suit under the governing law.'" *Id.*

The "essential inquiry" at the summary stage, when viewing the record as a whole, is whether the evidence is "so one-sided that is does not present a significant disagreement to require submission to the jury." *Torgerson*, 643 F.3d at 1052. Speculation and conjecture are insufficient to defeat summary judgment. *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 794 (8th Cir. 2012).

### III.  ARGUMENT

**A.      FLSA Exemptions**

The FLSA provides that employees in certain capacities will be exempt from the overtime requirements of the FLSA.  29 U.S.C. § 213.  Employees employed in "a bona fide executive capacity" are not entitled to one and one-half times for hours worked over forty hours a week. 29 U.S.C. § 213(a).  Similarly, employees employed in a "bona fide administrative capacity" are not required to be paid one and-a-half for hours worked over forty hours per week. *Id*.  Finally, highly compensated employees are exempt under the FLSA.  29 C.F.R. § 541.601. Whether an employee's activities excluded them from the overtime benefits of the FLSA is

generally a question of law.  *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 426 (8th Cir. 1996).

The AMWA follows the FLSA when applying these exemptions.  Ark. Admin. Code 010.14-11.

Further, the U.S. Supreme Court recently rejected a narrow reading of the FLSA

exemptions:

> The Ninth Circuit also invoked the principle that exemptions to the FLSA should
> be construed narrowly. 845 F. 3d, at 935-936. We reject this principle as a useful
> guidepost for interpreting the FLSA. Because the FLSA gives no "textual
> indication" that its exemptions should be construed narrowly, "there is no reason
> to give [them] anything other than a fair (rather than a 'narrow') interpretation."
> Scalia, Reading Law, at 363. The narrow-construction principle relies on the
> flawed premise that the FLSA "'pursues'" its remedial purpose "'at all costs.'"
> American Express Co. v. Italian Colors Restaurant, 570 U. S. 228, 234 (2013)
> (quoting Rodriguez v. United States, 480 U. S. 522, 525-526 (1987) (per
> curiam)); see also Henson v. Santander Consumer USA Inc., 582 U. S. ___, ___
> (2017) (slip op., at 9) ("[I]t is quite mistaken to assume . . . that whatever might
> appear to further the statute's primary objective must be the law" (internal
> quotation marks and alterations omitted)). But the FLSA has over two dozen
> exemptions in §213(b) alone, including the one at issue here. Those exemptions
> are as much a part of the FLSA's purpose as the overtime-pay requirement. See
> id., at ___ (slip op., at 9) ("Legislation is, after all, the art of compromise, the
> limitations expressed in statutory terms often the price of passage"). We thus have
> no license to give the exemption anything but a fair reading.

*Encino Motorcars v. Navarro*, No. 16-1362, 2018 U.S. LEXIS 2065, at *15 (Apr. 2, 2018).

### 1.      Administrative Exemption

DFJ contends that the administrative exemption applies to all Plaintiffs – Team Leaders,

Office Personnel (Financial Analysts), and Production Liaisons.  An "employee employed in a

bona fide administrative capacity" is an employee whose primary duty is "the performance of

office or non-manual work directly related to the management or general business operations of

the employer or the employer's customers.  29 C.F.R. § 541.200(a)(2).  The employee must be

compensated on a salary rate of not less than $455 per week. *Grage v. N. States Power Co.*, 813

F.3d 1051, 1055 (8th Cir. 2015).  To qualify for the administrative exemption, an employee's

primary duty must "include the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(3).

The primary duty of an employee's job is the "principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  Factors to consider when determining the primary duty of an individual can include the relative importance of exempt duties compared with other duties, the amount of time spent on exempt work, the employee's relative freedom from supervision, and the relationship between the employee's salary and wages paid to other employees for the kind of nonexempt work performed by the employee.  *Id*. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. 29 C.F.R. § 541.201(a).  An employee's primary duty is the duty of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of the employee's time.  *Spinden v. GS Roofing Prods. Co*., 94 F.3d 421, 427 (8th Cir. 1996).

Work directly related to management or general business operations includes, but is not limited to, finance, auditing, research, quality control, safety and health, labor relations, legal and regulatory compliance, personnel management, and similar activities.  29 C.F.R. § 541.201(b). An employee who leads a team of other employees to complete major projects for the employer generally meets the duties requirements for the administrative exemption.  29 C.F.R. § 541.203(c).

Exercise of discretion and independent judgment involves "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).  Matters of significance refers to the level of importance or consequence of the work performed.  *Id*.  Employees can exercise

discretion and independent judgment "even if their choices are reviewed at a higher level." 29

C.F.R. § 541.202(c). Factors to consider when determining if an employee exercises discretion

and independent judgment include whether the employee has the authority to implement

management policies or operating procedure, whether the employee carries out major

assignments in conducting the operations of the business, whether the employee performs work

that affects business operations to a substantial degree, and whether the employee provides

consultation to management. 29 C.F.R. § 541.202(b). The volume of an employer's business

may necessitate numerous employees performing administrative work, but this does not mean

the work does not involve the exercise of discretion and independent judgment. 29 C.F.R. §

541.202(d).

### (a)       Administrative Exemption - Team Leaders

The Team Leader position is properly classified as exempt under the administrative

exemption. The Team Leaders were compensated at a salary rate of more than $455 per week.

The Team Leader's primary job duty was to use his or her judgment and sense to lead a team to

complete projects on behalf of the employer. While the Team Leaders would sometimes

perform nonexempt work as collateral tasks, their primary duty was to lead the team in the

performance of the team's day-to-day tasks. Coates Dep., at 15:5-15:15. Team Leaders earned

more in compensation than the hourly team members because of the exempt work they

performed. Warrington Dep., at 44:7-44:16.

Specifically, 29 C.F.R. § 541.203(c) lists employees who leads teams of other employees

as a consummate example of an employee properly categorized as exempt under the

administrative exemption. Team Leaders would assign the employees on the team to different

jobs to complete projects efficiently. Anderson Dep., at 35:16-35:20. Rather than doing manual

work, the Team Leaders primarily would provide guidance to the employees to complete the work on the project.  Anderson Dep., at 35:23-36:2.  The Team Leaders primarily teach the employees on the team how to properly perform the functions of that team's job rather than doing the job themselves.  Coates Dep., at 22:12-22:15; Coates Dep., at 23:21-24:1.  The Team Leaders are solely in charge of their team's activities and the team acts at the discretion and independent judgment of the Team Leaders.  Coates Dep., at 15:5-15:15.  The Team Leaders do not need to speak to their superiors before answering questions the team may present. Coates Dep., at 24:2-24:13; Coates Dep. at 24:23-25:4.

The Team Leaders also regularly engaged in personnel management and quality control, two other activities the applicable regulations list as examples of work directly related to management or general business operations.  The Team Leaders are responsible for personnel management for their teams.  Team Leaders draft and sign off on performance reviews and manage the time entries of their teams.  Coates Dep., at 20:11-20:19; Coates Dep., at 21:7-21:8; Coates Dep., at 72:7-72:16.  When needed, Team Leaders can and do initiate the discipline process for members of their team.  Anderson Dep., at 23:4-23:23.  Team Leaders handle "any employee issues that may arise."  Coates Dep., at 36:13-36:25.  A Team Leader recognizes the abilities of their team and develops them into strong employees to improve DFJ's operations. Anderson Dep., at 36:8-36:18.

Likewise, Team Leaders are responsible for the quality control of their team's projects. Team Leaders regularly are responsible for deciding when a project has been properly completed.  Anderson Dep., at 33:25-35:13.  The Team Leaders hold their team accountable to ensure the team conformed to the company's policies and procedures while performing their jobs.  Coates Dep., at 25:10-25:13.  To achieve this, Team Leaders are required to manage their

work area effectively.  Coates Dep., at 39:1-39:9.  Ultimately, the Team Leader must verify the proper processes have been completed at the end of each day to ensure the project is completed appropriately.

Craig Coates disagreed that he "managed" his team because his choices were reviewed. Coates Dep., at 43:7-43:10.  However, the regulations state employees can exercise discretion and independent judgment even if their choices are reviewed at a higher level. 29 C.F.R. § 541.202(c).  The Team Leaders had sole discretion in directing team activities on a day-to-day basis.  Coates Dep., at 15:5-15:15.  The Team Leaders independently decided how to assign the team members.  Anderson Dep., at 35:16-35:20.  It was the Team Leaders who determined causes of actions and made final decisions regarding the completion of major assignments, so that DFJ could complete and sell aircrafts worth millions of dollars.  Anderson Dep., at 33:25-35:13.  DFJ would be unable to operate its business without the Team Leaders performing their work effectively.  For example, Mr. Anderson's team was responsible for correctly building the cabinets in the aircraft to guarantee they would be ready for purchase.  Anderson Dep., at 29:13-29:23

Not only do Team Leaders provide consultation to management, DFJ employees consider Team Leaders as management. Coates Dep., at 20:11-20:19; Coates Dep., at 21:7-21:8; Coates Dep., at 72:7-72:16; Warrington Dep., at 8:19-8:22; Vandervort Dep. at 75:21-23.  Coates testified that he would attend management meetings as a Team Leader with other managers. Coates Dep., at 26:14-26:16.  Multiple Team Leaders were needed due to the size of Defendant's business, but the regulations are clear that this is irrelevant to whether discretion and independent judgment were exercised. 29 C.F.R. § 541.202(d).

For these reasons, DFJ properly classified Coates and all other Team Leaders as exempt employees under the administrative exemption.

### (b)      Administrative Exemption – Office Personnel (Financial Analysts)

The five employees in the Office Personnel class (or Financial Analysts) performed office work and were paid a salary of at least $455 per week. The Office Personnel consist of two job titles – Financial Analyst I and Financial Analyst II.  Ms. Warrington, a Financial Analyst II employee, is the named Plaintiff and her position will be discussed first.

A Financial Analyst II employee monitors the aircraft cost throughout the production and looks for variance from the budget prior to an invoice being produced. Warrington Dep., at 60:12-60:19. Warrington was skilled at this duty and she has mentored three or four new analysts to accelerate their learning curve. Warrington Dep., at 56:2-56:11.  Warrington's job description attached to her deposition further defines these job duties.  Clearly, Warrington's job as a Financial Analyst II is an office job and it, particularly the cost analysis aspect of it, directly relates to the "management or general operations" of DFJ's business.  Ms. Warrington does not allege she possessed other job duties beyond her job description.  Furthermore, it is evident that Ms. Warrington audited major projects to compare the actual costs to the costs predicted by the budget.

Ms. Warrington exercised discretion and independent judgment while performing her job duties.  Warrington did not need her manager to be available to do her job and she regularly worked with other managers to maintain the integrity of the process. Warrington Dep., at 61:9-61:24.  Ms. Warrington performed the functions of her job with minimum supervision and was responsible for accomplishing objectives and tasks.  Warrington Dep., at 52:9-52:16.  When new analysts were hired, Ms. Warrington would train the new hires when they struggled, an activity

she was not directed to perform.  Warrington Dep., at 53:7-53:17.  When there were management meetings, Ms. Warrington would attend and provide input regarding her concerns with the content of the meetings.  Warrington Dep., at 63:3-63:13.  The Financial Analyst II position demonstrates all of the factors to consider when determining if an employee exercises discretion and independent judgment under 29 C.F.R. § 541.202(b).  The Financial Analyst II position falls under the administrative exemption.

As a Financial Analyst I, Thomas would research and gather data for special projects to support her suggestions for how DFJ could save production costs, a job only she performed. Thomas Dep., at 15:12-15:22; Thomas Dep., at 16:1-16:7.  Ms. Thomas would research and analyze cost data to determine if the company could save money by reducing costs.  Thomas Dep., at 17:9-18:1.  All of this work directly related to DFJ's "management or general business operations" because it constituted auditing and research.

Ms. Thomas maintained discretion and independent judgment while performing her work. No one told Ms. Thomas how to do her job and she had complete freedom to execute and do her job as she saw fit.  Thomas Dep., at 19:9-19:21.  She had "complete discretion" in collecting and analyzing the data.  Thomas Dep., at 19:22-20-2.  Even though her superior would edit her work prior to it being presented, Ms. Thomas estimated that seventy-five percent of the final work was her work.  Thomas Dep., at 19:2-19:8.  Ms. Thomas would present her findings at monthly consultation meetings with management and she planned these meetings with no supervision or changes from superiors.  Thomas Dep., at 28:20-28:25; Thomas Dep., at 30:4-30:17.  Ms. Thomas's testimony demonstrates that she exercised near complete discretion and wholly independent judgment in completing her special projects involving auditing and researching data to analyze it and recommend ways DFJ could reduce costs and save money.

Because these projects directly related to the management or business operations of DFJ, the Financial Analyst I position is properly classified as exempt under the administrative exemption.

### (c)      Administrative Exemption – Production Liaisons

All of the Production Liaisons in this action were paid a salary at the appropriate rate of not less than $455 per week.  Production Liaisons were responsible for providing assistance and guidance between departments to facilitate the everyday processes of facilities.  Smith Dep., at 18:16-18:25; Smith Dep., at 20:12-22:4.  Mr. Smith would undertake independent projects to perform a root cause analysis in order to provide assistance and guidance more effectively. Smith Dep., at 24:9-24:15.  This work directly related to the management and business operations because it involved quality control and research.

Production Liaisons exercise discretion and independent judgment over matters of significance while performing their primary job duty.  Mr. Smith would do independent projects without any direction to undertake a root cause analysis.  Smith Dep., at 24:9-24:15.  The Production Liaisons would use their judgment to research issues to solve problems and they did so without any assistance from other employees.  Smith Dep., at 31:25-32:19.  Mr. Smith had discretion on how he executed his projects so long as he stayed within policies and procedures. Smith Dep., at 48:2-28:19.  None of this work is manual labor similar to working on the manufacturing line.  Mr. Smith's testimony is clear that Production Liaisons compare and evaluate courses of conduct to make decisions after considering possibilities, as required by 29 C.F.R. § 541.202(a).  Production Liaisons solve technical problems and provide guidance to other employees (like Team Leaders) in various production departments. They also connect the appropriate DFJ personnel (for example, Engineers) with employees in various production departments to solve technical problems and provide guidance.  For the aforementioned reasons,

the Court should find that Production Liaisons are properly classified as exempt under the administrative exemption.

### 2.     Team Leaders – Executive Exemption

DFJ also asserts that the Team Leaders are exempt employees under the executive exemption.  An employee who meets the executive exemption is exempt from FLSA requirements relating to overtime pay. *Madden v. Lumber One Home Ctr., Inc*., 745 F.3d 899, 903 (8th Cir. 2014).  An employee who is employed in a bona fide executive capacity must be compensated on a salary basis of at least $455 per week. *Garrison v. Conagra Foods Packaged Foods*, LLC, 833 F.3d 881, 885 (8th Cir. 2016).  The employee's primary duty must be "management of the enterprise in which the employee is employed or of a customarily recognized department or supervision."  29 C.F.R. § 541.100(a)(2).  The exempt employee must "customarily and regularly" direct the work of two or more other employees.  29 C.F.R. § 541.100(a)(3).  Furthermore, the exempt employee must have "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employee", and these suggestions and recommendations must be given particular weight. 29 C.F.R. § 541.100(a)(4).

Management includes training employees, setting and adjusting their rates of pay and hours of work, directing the work of employees, maintaining production records for use in supervision or control, appraising employee's productivity and efficiency, handling employee complaints and grievances, planning the work, apportioning the work, and controlling the flow and distribution of materials and supplies. 29 C.F.R. § 541.102.  In addition to the actual work performed, courts should also consider the job description and performance review criteria.  *Ely v. Dolgencorp*, *LLC*, 827 F. Supp. 2d 872, 886 (E.D. Ark. 2011).

11

Factors to be considered when determining if an employee's suggestions are given "particular weight" include whether the employee's job duties include making suggestions and recommendations, the frequency suggestions or recommendations are made, and the frequency with which the suggestions and recommendations are relied. 29 C.F.R. § 541.105. The suggestions and recommendations may still have "particular weight" even if a higher-level manager's recommendation has more importance or if the employee does not have the authority to make the ultimate decision. *Id*. Many different employee duties and levels of involvement can satisfy the particular weight element. *Madden*, 745 F.3d at 904. Particular weight can be shown by evidence that the purported executive's input had more influence than hourly employees' input. *Id*. at 906. The authority to schedule hours that results in direct economic consequences for the employees has been found to be sufficient weight. *Garrison v. Conagra Foods Packaged Foods, LLC*, No. 4:12-cv-00737-SWW, 2015 U.S. Dist. LEXIS 891, at *38-39 (E.D. Ark. Jan. 6, 2015).

Concurrent performance of exempt and nonexempt work does not disqualify the employee from the executive exemption if the other requirements are met. 29 C.F.R. § 541.106(a). Exempt executives remain responsible for the success or failure of business operations under their management while performing nonexempt work. *Id*. The primary duty analysis for the executive exemption is the same analysis used under the administrative exemption. 29 C.F.R. § 541.700.

The phrase "two or more other employees" means two full-time employees or their equivalent. 29 C.F.R. § 541.104(a). This means the exempt employee must supervise eighty hours of employee work per week. *Kloster v. Goodwill Indus. of Cent. Iowa*, No. 4:13-cv-00119,

2014 U.S. Dist. LEXIS 184136, at *29 (S.D. Iowa Dec. 2, 2014). "Customarily and regularly" means a frequency greater than occasionally, but less than constantly.  29 C.F.R. § 541.70.

DFJ pays Coates and all other Team Leaders a salary of at least $455 per week.  The Team Leaders have at least six employees on a team, and they typically can have twelve or more. Coates Dep., at 12:21-13:2; Anderson Dep., at 25:16-25:20.  Therefore, the two-full time employee requirement is satisfied.  Even though Plaintiffs will likely argue that the Team Leaders sometimes engaged in nonexempt work, the executive exemption still applies because the exempt requirements are met.

Team Leaders manage the employees by training them, directing their work, maintaining production records, appraising the employee's productivity, handling employee issues, and planning the work.  Anderson, in his role as Team Leader, assigned his employees to different jobs to best supply the aircraft cabinetry.  Anderson Dep., at 35:16-35:20.  Anderson would provide his team with guidance, so they could perform their job well. Anderson Dep., at 35:23-36:2; Coates Dep., at 22:12-22:15; Coates Dep., at 23:21-24:1.  The Team Leaders are solely responsible in directing the day-to-day work.  Coates Dep., at 15:5-15:15.  A Team Leader will appraise an employee and train them to be better employees.  Anderson Dep., at 36:8-36:18. Employees throughout Defendant's facility consider the Team Leaders to be part of management.  Coates Dep., at 20:11-20:19; Warrington Dep., at 8:19-8:22.

Team Leaders are responsible for handling "any employee issues that may arise." Coates Dep., at 36:13-36:25.  Team Leaders are involved in deciding if a team member will be terminated.  Vandervort Dep., at 40:16-40:19.  The Team Leaders initiate the discipline process for members of the team.  Anderson Dep., at 23:4-23:23.  Records were kept by the Team Leaders for the purpose of supervision and control.  Anderson Dep., at 46:1-48:25.  It is the

Team Leaders who draft and sign off on performance reviews, and the Team Leaders are also responsible for reviewing time entries.  Coates Dep., at 20:11-20:19; Coates Dep., at 21:7-21:8; Coates Dep., at 72:7-72:16.  The record supports that the Team Leaders managed their employee.

These suggestions and recommendations are given particular weight as required by the regulations.  Coates believed he was not a manager because he did not have the final say in some matters, but the regulations allow for another superior to make the ultimate decision.  Coates Dep., at 43:7-43:10.  The Team Leaders, as the individuals with sole responsibility for control of the work flow, had more influence on matters than the members of the team.  Coates Dep., at 15:5-15:15.  Importantly, it is the Team leaders who draft performance reviews and sign off on them for the employees on their respective team.  Anderson Dep., at 23:4-23:23.  Performance reviews are used in the administration of pay raises and promotions.  Coates Dep., at 37:14-37:18.  Team Leaders recommendations on promotion and advancement are given weight. Vandervort Dep., at77:6-77:13.  Since the reviews resulted in direct economic consequences, and since the Team Leaders' other suggestions were given "particular weight", DFJ properly classified the Team Leaders as exempt under the executive exemption.

3.     **Highly Compensated Employees – Team Leaders**

DFJ also asserts that certain Team Leaders, like Coates and Anderson, were properly classified as highly compensated employees and, therefore, exempt.  The FLSA regulations exempt "highly compensated employees," which are employees who have a total annual compensation of at least $100,000, and who "customarily and regularly" perform any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee. 29 C.F.R. § 541.601(a). A high level of compensation is a strong indicator of an employee's exempt status, eliminating the need for a detailed analysis of an employee's job duties.  29 C.F.R.

§ 541.601(c).  Similarly, the "customarily and regularly" language is construed as above.  The frequency must be greater than occasional but need not be constant as long as the work is performed normally and recurrently every workweek. 29 C.F.R. § 541.701.  An employee qualifies for the highly compensated employee exemption even if their primary duty was to perform nonexempt work, so long as the employee also performed at least one exempt duty regularly.  *In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910, 943 (D. Minn. 2010).

Some Team Leaders would also be exempt as highly compensated employees.  Anderson testified he earned approximately $100,000 a year in his last three years of employment.  Anderson Dep., at 45:3-45:15.  DFJ paid Mr. Coates approximately $308,000 between June of 2014 and June of 2017.  Coates Dep., at 57:3-57:10.  These salary levels remove the need for a detailed analysis into job duties.  Team Leaders, as discussed above, performed administrative and executive exempt duties occasionally at the very least.  Moreover, the Team Leaders who received a high level of compensation performed at least one exempt duty regularly when the led their teams.  Under this relaxed analysis, Team Leaders who are highly compensated and meet the $100,000 annual compensation threshold will certainly be exempt because they all engaged in the aforementioned exempt duties customarily and regularly.

## B.     FLSA Off The Clock Claims By Office Personnel (Financial Analysts)

Unlike the Team Leaders and Production Liaisons, the Office Personnel (Financial Analysts) allege that they worked overtime off of the clock and are entitled to overtime.  Plaintiffs who sue for unpaid overtime have the burden of proving that they performed work for which they were not properly compensated.  *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014).  General allegations couched in base assertions and vague testimony that fails to reference specific days and hours worked fail to meet "even the relaxed evidentiary standards."

*Id*. at 1059-1060.  Employees must be compensated if the employer "knows or has reason to believe" the employee continued to work. *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975).

"When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA."  *White v. Baptist Mem'l Health Care Corp*., 699 F.3d 869, 876 (6th Cir. 2012).  An employer must have actual or constructive knowledge that the employee has worked overtime in order to be liable under the FLSA. *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997).

*Holaway* states that employees must put forward evidence of the amount and extent of work in excess of forty hours a week for any week worked, especially when there are claims that every week of employment involved excess hours.  *Id*. at 1059.  If an employer fails to maintain accurate time records, the employee is relieved of proving the exact extent of uncompensated work and is given a relaxed evidentiary standard.  *Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013).  The relaxed standard is met if an employee has sufficient evidence to show the amount and extent of work "as a matter of just and reasonable inference."  *Id*.  While the burden may be relaxed, it is not eliminated, and the employees must still prove the existence of damages.  *Id*. at 407.

The Eighth Circuit has found that employees who fail to "identify any record evidence showing actual damages from unpaid work in excess of forty hours per week" do not even satisfy the relaxed evidentiary burden with unsupported estimations.  *Carmody*, 713 F.3d at 407.  The *Carmody* court found that police officers who generally described overtime occurrences without specific dates worked, specific hours worked, or money owed could not satisfy the relaxed burden.

16

*Id.* The general estimates are further undercut when the employee fails to take into account any paid holidays, paid vacation, or days they were on duty but not called out to work. *Holaway*, 771 F.3d at 1060.

Thus, assuming only for this argument, that Ms. Warrington and the other Office Personnel/Financial Analysts are determined to be non-exempt employees, there is no record evidence that accurately reflect the hours the employees allege that they actually worked. Warrington and Thomas point to DFJ's gate records, but those security records only reflect when an employee arrives or leaves through the security gate, not when they begin or end compensable work. Beyond that, Warrington and Thomas simply speculate at how much overtime they averaged per week from June 2014 – June 2017. Without evidence of the actual hours worked, the overtime claims of the Office Personnel/Financial Analysts must fail and should be dismissed.

## C.     FLSA Damages

DFJ further asserts it is entitled to the fluctuating work week ("FWW") defense as to all Plaintiffs. Assuming, only for this argument, that the Court or the jury determines certain Plaintiffs are non-exempt employees, then the fluctuating workweek doctrine allows DFJ to argue that the salary already paid to the employee covers the straight time for all hours worked. Thus, DFJ would only owe the extra half time of compensation for the alleged unpaid overtime. *See* 29 C.F.R. § 778.114. If the Court declines to dismiss any Plaintiffs under the FLSA exemptions analysis, DFJ respectfully requests that the Court rule that the FWW applies to any damages calculation.

Further, DFJ paid Team Leaders and Production Liaisons straight time for all overtime hours worked. It was intended to supplement the salaries of exempt employees. Vandervort Dep., at 80:7-17. Thus, DFJ respectfully asks that the Court rule that these employees, even if they are

found to be non-exempt employees, have no damages because of DFJ's set-off defense based upon its straight time overtime policy. In other words, if DFJ had never adopted its straight time overtime policy and did not pay the Team Leaders and Production Liaisons any straight time overtime for the overtime hours they worked, then DFJ would only be required to pay the extra half time for the overtime hours worked under the FWW method as described above. But, under its straight time overtime policy for exempt employees, DFJ has already paid the Team Leaders and the Liaisons <u>twice</u> the amount it would have owed under the FWW without the straight time overtime policy. Thus, if DFJ is not entitled to the offset based upon this straight time overtime policy, then Plaintiffs will receive more overtime compensation than the law requires and DFJ will be punished for adopting a pay policy intended to supplement the salaries of exempt employees. DFJ respectfully requests that the Court find that, even if the Team Leaders are found to be non-exempt employees, they have no damages because of DFJ's straight time overtime policy and should not receive this windfall.

## D.    Counterclaim - Separation Agreements

DFJ filed a Counterclaim against ten (10) opt-in Plaintiffs (four of them were dismissed by the Court because they were non-exempt employees) based upon separation agreements signed by these employees in which they receive severance payments in exchange for a full release. DFJ respectfully requests that the Court rule on the legal issue of whether the language releasing the Plaintiffs' FLSA rights is enforceable and whether these Plaintiffs may maintain their FLSA claims. *See Lynn's Foods Stores v. United States*, 679 F.2d 1350 (11th Cir. 1982). If the Court deems the release invalid, then DFJ asks that the Court require the Plaintiffs to return the consideration they received or allow a jury to determine that question. Defendant will again address this argument in its Response to Plaintiffs' Motion to Dismiss Counterclaim, DE 73.

Further, DFJ respectfully asks that the Court also determine if the language releasing Plaintiff's AMWA rights is valid.  DFJ contends that the law which purports to require court or DOL approval for certain waivers of FLSA rights is unique to the FLSA and Arkansas has not adopted that concept for the AMWA.

## IV.  CONCLUSION

For these reasons, Defendant Dassault Falcon Jet Corp. respectfully requests that the Court enter summary judgment against Plaintiffs and grant Defendant all other proper and just relief.

Respectfully Submitted,


Brian A. Vandiver
Cox, Sterling, McClure & Vandiver, PLLC
8712 Counts Massie Road
North Little Rock, AR 72113
(501) 954-8073
bavandiver@csmfirm.com

By:  /s/ *Brian A. Vandiver*
Brian A. Vandiver, Ark. Bar No. 2001078

*Attorney for Defendant Dassault Falcon Jet Corp.*

## CERTIFICATE OF SERVICE

I, Brian A. Vandiver, do hereby certify that a true and correct copy of the foregoing pleading was filed with the Clerk of Court and served via ECF to the following on this 19th day of July, 2018:

Chris Burks
Josh Sanford
Sanford Law Firm, PLLC
650 S. Shackleford, Suite 411
Little Rock, AR 72211
chris@sanfordlawfirm.com
josh@sanfordlawfirm.com

By:   /s/ *Brian A. Vandiver*
      Brian A. Vandiver