# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

CRAIG COATES; MOLLY WARRINGTON;           PLAINTIFFS
and EDWIN SMITH, individually and on behalf
of all others similarly situated

v.                         No. 4:17CV00372 JLH

DASSAULT FALCON JET CORPORATION           DEFENDANT

## OPINION AND ORDER

The plaintiffs claim that Dassault Falcon Jet Corporation failed to pay them overtime in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et. seq*. Dassault has moved for summary judgment, arguing that the plaintiffs are exempt employees and not entitled to overtime wage protections. The plaintiffs have also moved for partial summary judgment on the inapplicability of the exemptions raised by Dassault.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.*

Dassault relies on three FLSA exemptions that also apply to the AMWA: the executive, administrative, and highly compensated employee exemptions. Both sides agree that the executive and administrative exemptions only apply where an employee is compensated on a salary basis. *Cf.* 29 C.F.R. §§ 541.100, 541.200. Subject to certain exceptions, an employee is paid on a salary basis "if the employee regularly receives each pay period . . . a predetermined amount" that "is not subject to reduction because of variations in the quality or quantity of the work performed." *Id.* § 541.602(a). The highly compensated employee exemption applies if "[t]he employee receives total annual compensation of at least the annualized earnings amount of the 90th percentile of full-time nonhourly workers nationally" and "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." *Id.* § 541.601(a).[1] These exemptions are treated as affirmative defenses, and the employer bears the burden of proving that its employee falls within the asserted exemption. *Madden v. Lumber One Home Ctr., Inc.*, 745 F.3d 899, 903 (8th Cir. 2014).

---

[1] Before December 1, 2016, the total compensation threshold was $100,000. After this date, the total compensation threshold is $134,004. 29 C.F.R. § 541.601(b).

The plaintiffs in this collective action are divided into three classes: team leaders, production liaisons, and office personnel. Named plaintiff Craig Coates works as a team leader; named plaintiff Edwin Smith works as a production liaison; and named plaintiff Molly Warrington works as a financial analyst and is office personnel. Dassault argues that team leaders are executive, administrative, and highly compensated employees, that production liaisons are administrative employees, and that office personnel are administrative employees.

Dassault has not provided evidence that team leaders or production liaisons were paid on a salary basis—a necessary element of the executive and administrative employee exemptions. In its brief it simply asserts that these employees were paid a salary of at least $455 per week. Document #93 at 5 and 10. The assertions, as they stand, are bald, as Dassault provides no citation to the record for support. In its response to the plaintiffs' interrogatories, on the other hand, Dassault stated that "the Plaintiffs were paid a salary using an hourly rate multiplied by hours [worked]" and described the wage calculation as "Annual salary figure divided by 2080 to arrive at Plaintiffs' hourly rate multiplied by hours worked that period." Document #83-2 at 4. But for the word "salary," Dassault described wages paid on an hourly basis and not wages constituting "a predetermined amount . . . not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).

Team leaders and production liaisons clocked in and out, and Dassault paid them according to the hours of work recorded. For example, Coates's earnings report shows the type and number of hours worked (regular, overtime, holiday, sick), his hourly rate, and the total pay as a function of the hours work and hourly rate. Document #83-10 at 2. Richard Cart, Dassault's senior human resource generalist, confirmed that team leaders and production liaisons were paid based on the

number of hours actually worked. Document #83-1 at 13. As Cart explained, an employee that works less than 80 hours in a two-week period will not be paid for 80 hours of work unless they have vacation or sick time to supplement the hours not worked. *Id.* at 11-12.

Dassault's payroll records also affirmatively show that the team leaders and production liaisons were not paid on a salary basis. For the pay period ending on October 15, 2016, Smith was paid for 56.64 hours of "regular" work. Document #83-3 at 4. When this number is divided by 8 (the workday Dassault used to calculate the hourly rate), there is a remainder, meaning that Dassault reduced the base pay by partial days. *See* 29 C.F.R. § 541.602(b)(1) (explaining that employers may reduce a salaried employee's pay where the employee is absent for one or more full days for personal reasons, but where "an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence").

Moreover, "[a]n employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business." *Id.* For example, the payroll records show that for the pay period ending on January 8, 2017, Dassault reduced the pay of Smith and another opt-in plaintiff due to "Christmas shutdown." Document #83-3 at 4; Document #83-5 at 1. The regulations are clear that "[i]f the employee is ready, willing and able to work, deductions may not be made for time when work is not available." 29 C.F.R. § 541.602(a). The deductions for "Christmas shutdown" were not made prospectively, nor were they due to economic conditions requiring cost saving measures. *Cf. In re Wal-Mart Stores, Inc.*, 395 F.3d 1177 (10th Cir. 2005), *as amended on denial of reh'g* (Feb. 28, 2005).

4

Dassault has not shown that these deductions were isolated or made inadvertently. *See* 29 C.F.R. § 541.603(c). The facts demonstrate, and Dassault has produced no evidence to show otherwise, that it intended to pay team leaders and production liaisons on an hourly basis. *See id.* § 541.603(a). Team leaders and production liaisons are not paid a salary and do not qualify for the executive and administrative exemptions.

The situation is different with office personnel. Molly Warrington testified that she did not clock in and out but that Dassault's payroll system automatically posted 8 hours per day for her, whether she worked 8 hours or not. Document #91-3 at 38. Warrington testified both that she did "not consider [herself] a salaried employee based on [her] past history as a salaried employee" and that Dassault paid her a salary. *Id.* at 49-50. The plaintiffs agree that Warrington was paid a salary. Document #104 at 15, ¶50. They maintain, however, that she and other office personnel are nonexempt because office personnel do not exercise discretion or independent judgment.

An administrative employee exempt under the FLSA is an employee "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). The discretion and independent judgment relevant here "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 541.202(a). The evidence on whether office personnel exercised discretion and independent judgment is in conflict. Warrington and another financial analyst, Amanda Thomas, testified that they did not have the power to make any decision. Document #91-3 at 28; Document #91-4 at 17. On the other hand, Thomas testified that she "was tasked with identifying issues and trying to get the information together that would support . . . my suggestion to fix these issues that [she] would then give to [her] management." *Id.* at

5

15. While "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level," the exercise of discretion and independent judgment does not include recording or tabulating data. 29 C.F.R. §§ 541.202(c), (e). Dassault bears that burden of proving the exemption applies, and it has not met that burden here.

Dassault next argues that team leaders are exempt as highly compensated employees. It has not, however, provided evidence that team leaders were paid more than $100,000 annually for years up to December 1, 2016, and more than $134,004 after December 1, 2016. Dassault relies on Coates's deposition testimony where he agrees that he was paid $308,000 between June 2014 and June 2017. Document #91-1 at 57. There is no yearly breakdown of pay, and no way for the Court to determine whether Coates was paid above the required threshold for each year.[2] Another team leader, Robert Anderson, testified that he earned more than $100,000 his final year at Dassault because of a severance package he was given; otherwise, when asked whether his salary "would have been close to a hundred thousand dollars," he responded, "Roughly, yes." Document #91-2 at 45. Dassault has not met its burden to show that team leaders were highly compensated employees during the relevant period.

Last, Dassault sets its sights on damages. It first argues that office personnel cannot prove damages and so their claims must be dismissed. This argument is without merit. As Warrington testified, her time was automatically logged by Dassault's payroll system. She also testified that the recorded time did not accurately reflect the number of hours she worked. She testified that a record of her true hours worked could be made from her gate scans when arriving and leaving work for the

---

[2] It is possible, for example, that Coates was paid $99,000 from June 2014 to June 2015, $99,000 from June 2015 to June 2016, and $110,000 from June 2016 to June 2017.

6

day, her computer work, and notes of her actual time worked that she kept covering some period of time. Document #91-3 at 37-38. Employees that are misclassified as exempt by employers under the FLSA are subject to a "relaxed standard of proof," if the employer has failed to keep records of the employee's time worked. *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014).

Second, Dassault argues that overtime damages should be calculated using the fluctuating work week method. This method calculates the hourly rate of pay for an employee who is paid a salary and who works varying hours per week by dividing the weekly wage by the total number of hours that the employee worked in a given week rather than by forty. *See Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010). Dassault says that this is justified because it has already paid team leaders and production liaisons "straight time" overtime for all overtime hours worked. Dassault says that if this method is not used, then team leaders and production liaisons would receive a windfall. As explained above, team leaders and production liaisons were not paid on a salary basis, and so the fluctuating workweek method is not appropriate. It should be noted, though, that any overtime that has already been paid will affect the amount of "unpaid" overtime to which the plaintiffs may claim entitlement.

## CONCLUSION

For the foregoing reasons, Dassault's motion for summary judgment is DENIED. Document #91. The plaintiffs' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART. Document #83. Team leaders and production liaisons are not paid on a salary basis and therefore are not exempt as executive or administrative employees. At this stage, the Court cannot determine as a matter of law whether the team leaders are highly compensated employees or whether

the office personnel are administrative employees. These questions, along with whether the office personnel can prove damages and the extent of unpaid overtime damages, are reserved for trial.

IT IS SO ORDERED this 9th day of August, 2018.

*J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE